IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES MICHAEL AMOR** <br> **PATRICIA ELVIRA AMOR,** <br> 213 N. Kinzer Ave. <br> New Holland, PA 17557 | NO.   21-5574 |
| *Plaintiffs*, | CIVIL ACTION |
| vs. | JURY TRIAL DEMANDED |
| **COURTNEY CONOVER** <br> 6522 Mason Cir <br> Randleman, NC 27317 | |
| *Defendant*. | |

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs, by and through their undersigned counsel, hereby submit the following Brief in Support of their Motion for a Preliminary Injunction.[1] The Plaintiffs have filed this Preliminary Injunction simultaneously with their Defamation Complaint against the Defendant.

### I.   FACTUAL BACKGROUND

James Michael Moore and his wife, Patti, have brought suit following a series of defamatory posts by the Defendant. Dr. Amor is a Doctor of Medical Dentistry who also works and has worked for many years as Performance Entertainment Director for the Pittsburgh Renaissance Festival (Faire). He has been employed as Performance Entertainment Director at other Faires. These are paid positions and require organizational skills, talent spotting, and the ability to manage personnel.

---

[1] Plaintiffs' Complaint (ECF Doc. 1) has already requested injunctive relief.

The facts of this case arose prior to the summer of 2020, when Dr. Amor was Performance Entertainment Director and the Defendant was a paying guest. Patricia Elvira was Co-Performance Director during the Faire.

Starting in April 2021 and continuing periodically throughout the year, the Defendant has posted false and defamatory allegations accusing the Plaintiff and his wife of aiding and abetting pedophiles and/or rapists. The Plaintiffs are accused of, among other things, refusing to take the victims' claims of rape and sexual assault seriously and retaliating against them. All these accusations are blatantly false.

Defendant's accusations include but are not limited to allegations that the Plaintiffs retaliated against said rape and/or sexual assault victims by, amongst other things, publicly humiliating them, calling them crazy, refusing to rehire them, and/or terminating them from employment.

Defendant's latest Post was on October 30, 2021. Defendant wrote a blog headed 'The Devil Who Rules the Pittsburgh Faire.' Since Dr. Amor had been the Performance Entertainment Director of the Pittsburgh Renaissance Festival, the heading immediately identified him. The first paragraph identified Dr. Amor by name. Dr. Amor is caste as the Devil himself. The Defendant represents that all the information in the Post is accurate because, according to the Defendant, the facts are derived from Dr. Amor himself.

In the article, Defendant first accuses Dr. Amor of retaliating against a young victim of sexual harassment by attacking her. Second, Patricia Elvira Amor, Dr. Amor's wife, is accused of laughing at a rape victim, calling her crazy and telling her to go home. Third, when the victim approached Dr. Amor, he allegedly told her that her accusations were false and she was not welcome to come back. Fourth, Defendant accuses Dr. Amor of protecting the rapist. Fifth, Dr.

4863-3090-8163, v. 13

Amor is accused of covering up sexual assault allegations for a decade or more and finally rebuffing a victim's protests and calling her a liar. Sixth, Dr. Amor is accused of retaliating against this victim by permanently refusing to let her work in Pittsburgh. Seventh, Dr. Amor refused to fire the rapist/pedophile. Eighth, Dr. Amor knowing this woman was a rape victim, screamed at her in Public, calling her crazy and a liar. Ninth, Dr. Amor covered up pedophilia and rape, thereby making him an aider and abettor. Tenth, the rape victim was allegedly afraid of Dr. Amor because he might beat her or kill her and, according to the Post, these fears were not unfounded. Eleventh, Dr. Amor has an abusive nature. Twelfth, Dr. Amor made fun of the victim, called her a psycho, said she was desperate and fat. Finally, Dr. Amor is referred to as evil. This Post is attached hereto and incorporated herein as Exhibit 1.

In an earlier post, the Defendant wrote that an underage rape victim would not and did not complain to Dr. Amor because she was afraid of possible retribution. The Post specifically states that Dr. Amor is an accomplice to pedophilia. See Exhibit 2.

In an April 2021 post, Defendant accused Dr. Amor of abusing a rape victim by calling her a liar, crazy and humiliating her in Public. Additionally, Defendant wrote that Dr. Amor reduced the victim to tears and that he fired a previous sexual assault victim and told people not to investigate her claims. Specifically, to quote Defendant, "he has been aiding and abetting the pedophile for two decades. Enough." See Exhibit 3.

## II. LEGAL ARGUMENT

### a. Standard of Review for Injunctive Relief

Pennsylvania law recognizes a claim for defamation where a plaintiff establishes:

1) the defamatory character of the communication; 2) its publication by the Defendant; 3) its application to the Plaintiff; 4) an understanding by the reader or listener of

its defamatory meaning; 5) an understanding by the reader or listener of an intent by the Defendant that the statement refer to the Plaintiff; 6) special harm resulting to the Plaintiff from its publication; [and] 7) abuse of a conditionally privileged occasion. *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 476 (E.D. Pa. 2010) (citing 42 Pa. Cons. Stat. Ann § 8343(a)). A statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990).

It is for the Court to decide whether a statement is defamatory. *U.S. Healthcare, Inc.,* 898 F.2d at 923. In doing so, it "must view the statements in context and determine whether the communication seems 'to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession.'" *Emekekwue v. Offor*, 26 F. Supp. 2d 348, 359 (M.D. Pa. 2014) (quoting *Baker v. Lafayette Coll.,* 532 A.2d 399, 402 (Pa. 1987)). "[M]ere insult[s]," such as "expressions of opinion, without more," and those that are "no more than rhetorical hyperbole or a vigorous epithet" are not defamatory. *Id.* (internal citations omitted).

A plaintiff must generally show "special harm" in order to make out a prima facie defamation claim. See, e.g., *Mzamane,* 693 F. Supp. 2d at 476. "Special harm" is "harm of a material and generally of a pecuniary nature" and "result[s] from conduct of a person other than the defamer or the one defamed which conduct is itself the result of the publication or repetition of the slander." *Restatement (First) of Torts* § 575 cmt. b; *U.S. Healthcare, Inc.*, 898 F.2d at 923. Damage such as "loss of reputation" and "lowered social standing and its purely social consequences," without accompanying "material" harm, is not "special harm." *Restatement (First) of Torts* § 575 cmt. b.

A plaintiff need not establish special harm if the communications at issue

are defamatory per se. *NTP Marble, Inc. v. AAA Hellenic Marble, Inc.,* 799 F. Supp. 2d 446, 452 (E.D. Pa. 2011). The defamation per se doctrine originated "to provide a remedy for a person whose reputation was damaged by the very utterance of...defamatory words, even though the person could not point to a specific pecuniary loss." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581 n.9 (E.D. Pa. 1999). A statement is defamatory if it "tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *U.S. Healthcare*, 898 F.2d at 923.

For The Court should assess "the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Corabi v. Curtis Publ. Co.,* 441 Pa. 432, 273 A.2d 899,907 (1971). If a plaintiff is the target of per se defamation, he or she is merely required to "make a showing of general damage, i.e., proof of reputational harm" or of "personal humiliation." *Synergy,Inc.*, at 581.

Rules of Civil Procedure authorize a district court to order preliminary injunctive relief upon notice to the adverse party. *See* Fed. R. Civ. 65(a)(1).

In considering whether a preliminary injunction should issue, the district courts measure (1) whether the movant has shown a reasonable probability of success on the merits, (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party, and (4) whether granting the preliminary relief will be in the public interest. *Flowserve Corp. v. Burns Int'l Servs. Corp.*, 423 F. Supp. 2d 433, 438 (D. Del. 2006) (*citing to Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153 (3d Cir.1999)). Accordingly, "the burden of establishing that injunctive relief is warranted rests on the party seeking the relief." <u>Flowserve</u>, 423 F.Supp. 2d at 438 (*citing to Acierno v. New Castle*

5

*County,* 40 F.3d 645, 653 (3d Cir. 1994)). The primary purpose of a preliminary injunction is to preserve the *status quo* until the merits of the case have been decided. <u>Id</u>.

Federal courts have recognized that "these four factors are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether preliminary injunctive relief is warranted. Rather, the factors interrelate on a sliding scale and must be balanced against each other." *Lee v. Christian Coal. of Am., Inc.,* 160 F. Supp. 2d 14, 26 (D.D.C. 2001) (internal citations and quotations omitted). Furthermore, "a particularly strong showing on one factor may compensate for a weak showing on one or more of the other factors." *Lee,* 160 F. Supp. 2d at 26.

As it relates to the first prong, "the Court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, the Court may grant an injunction even though its own approach may be contrary to the movants' view of the merits. The necessary 'level' or 'degree' of possibility of success will vary according to the Court's assessment of the other factors." *Id*. But, "If the plaintiff makes a particularly weak showing on one factor," courts have stated, "the other factors may not be enough to 'compensate.'" *Id.* [2]

A district court may consider reliable hearsay in ruling on a preliminary injunction motion. *Mullins v. City of New York*, 634 F. Supp. 2d 373, 387 (S.D.N.Y.), *aff'd*, 626 F. 3d 47 (2d Cir. 2010). Immediate emotional and psychological injury is generally the type of harm considered "irreparable." *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F. 2d 701, 710 (9th Cir. 1988).

Further, although there is no Pennsylvania case directly on point, both state and federal courts have held that wrongfully accusing a person of being a pedophile is defamation per se. See

---

[2] In that respect the court in Lee also observed that "it is particularly important for the plaintiff to demonstrate a substantial likelihood of success on the merits." Id. at 26-27 (*citing to Benten v. Kessler*, 505 U.S. 1084, 1085, (1992) (*per curiam*); *University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981*); Doran v. Salem Inn, Inc*., 422 U.S. 922, 934 (1975)).

*Miles v. National Enquirer, Inc*. 38 F. Supp.2d 1226, 1229 ((U.S. Dist. Co. 1999), ( where the Court held that "calling one a 'pedophile' or "sex offender" was defamatory per se.)

In the case of *Brian v. Richardson,* 660 N.E.2d 1126, 1129 (N.Y.App 1995), the New York Court of Appeals, when determining whether the ascription 'pedophile' was defamatory identified three factors to be considered by the Court: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian* at 1129 (citations, alteration, and internal quotation marks omitted).

With respect to the last factor, the Court to examined the "over-all context in which the assertions were made," taking into consideration the communication as a whole, as well as its tone and purpose. On that basis, it determined "whether a reasonable [listener] would have believed that the challenged statements were conveying facts about the [defamation] plaintiff." *DiFolco v. MSNBC Cable L.L.C.,* No. 06 Civ. 4728, 2007 WL 959085, *6 (S.D.N.Y. Mar 30, 2007) (quoting *Brian,* 660 N .E.2d at 1129-30). Finally, even if the statement is one of opinion, it will nonetheless be actionable if it "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it"-*i.e., Guerrero v. Carva,* 779 N.Y.S.2d 12, 18 (N.Y.App. Div. 1st Dep't 2004).

### b. Plaintiffs Meet All Prongs Necessary to Qualify for Injunctive Relief Due to the Defamation by the Defendant.

By virtue of the nature of the defamation, its context, and substance, in addition to its repetition, the Defendants have a reasonable probability of success on the merits. This success is based on a number of factors. First, the allegations against the Plaintiffs masquerade as true.

7

According to Defendant, they are not opinion. The Defendant secretes her defamation in a factual context of which she has direct and personal knowledge. She gives the defamation plausibility by alleging that the abuse has continued for some twenty years. She quotes specific examples where the Plaintiffs have retaliated against victims of rape and pedophilia and, in the process, protected both rapist and pedophile. Since these allegations are entirely false, the Plaintiffs believe they have a probability of success on the merits.

The conduct of which the Plaintiffs are accused is reprehensible and probably criminal. The Defendant accuses the Plaintiffs of aiding and abetting rape and pedophilia and retaliating against the victims. If the defamation is permitted to continue, the Plaintiffs' reputations will continue to be lowered in the estimation of the community. Equally important, it may well deter patients (and perhaps already has) from being treated by Dr. Amor. It could also cause significant problems for Dr. Amor in his position as Performance Entertainment Director. Indeed, several cities may decide not to hire him because of the baseless accusations made by Defendant.

If a preliminary injunction is not granted, the Plaintiffs' reputation will continue to suffer irreparable harm. However, if a preliminary injunction is granted, no harm will come to the Defendant.

Preliminary relief would be in the public interest. The Public is interested in ensuring that no innocent person suffers the false accusation of aiding and abetting sexual harassment and pedophilia. Further, the Public is interested in providing that the reputations of upstanding citizens, who have spent a lifetime establishing their good name, are not gratuitously destroyed by defamatory allegations published online. There is no doubt that in the tone and purpose of the blogs, the Defendant attempts to communicate facts to the Public, thereby making the defamation all the more plausible and more damaging.

### III. CONCLUSION

For the reasons set forth above, it is respectfully submitted that Plaintiffs' motion should be granted.

Respectfully submitted,

BY: *Timothy M. Kolman*
Timothy M. Kolman, Esquire
Attorney for Plaintiffs
414 Hulmeville Avenue
Penndel, PA 19047
(215) 750-3134

December 29, 2021

9

4863-3090-8163, v. 13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via this Court's CM/ECF system.

                KOLMAN LAW, P.C.

BY: *Timothy M. Kolman*
       Timothy M. Kolman, Esquire
       Attorney for Plaintiffs
       414 Hulmeville Avenue
       Penndel, PA 19047
       (215) 750-3134

December 29, 2021