IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES MICHAEL AMOR**<br>**PATRICIA ELVIRA AMOR,**<br>213 N. Kinzer Ave.<br>New Holland, PA 17557<br><br>*Plaintiffs*,<br><br>vs.<br><br>**COURTNEY CONOVER**<br>10631 Randleman Rd. #7<br>Randleman, NC 27317<br><br>*Defendant.* | NO. 21-5574<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

### BRIEF IN SUPPORT OF PLAINTIFFS' <br> MOTION FOR A TEMPORARY RESTRAINING ORDER

**I.      Introduction**

By and through their undersigned Counsel, Plaintiffs hereby submit the following Brief in Support of their Motion for a Temporary Restraining Order. As if set forth at length, the Plaintiffs incorporate their previously filed Complaint and Preliminary Injunction (ECF ¶2, 3).

This Court has now delayed the Plaintiffs' Preliminary Injunction hearing to April 26, 2022.

Given this delay and Defendant's ongoing defamatory conduct, Plaintiffs contend that a Temporary Restraining Order (TRO) is necessary.

Defendant has expressed an unrepentant intent to defame the Plaintiffs; a refusal to make herself available for a 2 to 3-hour deposition; a refusal to explain what medical condition she suffers from, if any, and why it would prevent her from being deposed; an ongoing belligerence

and disrespect to the Court and rudeness and discourtesy to Plaintiffs' Counsel (Counsel). Defendant has also admitted, on numerous occasions, that she has no direct evidence of any of the defamatory accusations against the Plaintiffs. However, Defendant continues to defame the Plaintiffs and is more careful in covering her tracks

Defendant has changed the setting on her posting (posting) to friends so that only fifty or so of her remaining friends on Facebook can see it.

In her posting with the date labeled 31422a (3/14/22), Defendant states she has "personally" prevented Plaintiff Amor's "takeover" of Florida Faires.

As of March 30 2022, Defendant has posted a link to her updated blog, the contents of which, when opened, have been attached and filed under seal as Exhibit 1.

Plaintiffs have attached as Exhibit 2 their affidavits swearing that the factual allegations made by Defendant are untrue.

## II.     Defendant's Recent Defamatory Internet Posts

On 01/05/22, Defendant's Blog referenced the gathering at Christmas of the cast of Pittsburgh Faire. Defendant has not talked to any one of the current cast, and neither has she spoken to any of the Pittsburgh Faire directors, Dr. Amor included. She alleges there was a discussion about what to do about Bri going forward.

On 01/16/22, Defendant updated her blogs to include screenshots.

On 02/10/22, Defendant's Blog references an article about "Why Some People Can't Apologize" as an apparent reference to this lawsuit and Dr. Amor. This is confirmed by the number and content of her Facebook entries.

On 03/01/22, Defendant's Blog references the lack of cooperation from people Defendant felt would corroborate her story.

On 03/30/22, as stated *infra,* Defendant continued to defame Plaintiffs albeit by attempting to hide her link. This link incorporates almost all prior defamatory statements against the Plaintiffs. (Exhibit 1)

On 11/02/21: (Conover110221FBa) Defendant's Facebook posts refer readers to her blog about "The Devil Who Rules The Pittsburgh Faire."

On 11/04/21: (Conover110421FBa) Defendant's Facebook states that if people did not want her to act on what she was told, don't tell her. As an abuse/rape survivor, Defendant will fight to expose the monster. (An apparent reference to Dr. Amor).

On 11/27/21: (Conover112721FBa), Defendant's Facebook post states that "since the Monster is likely concocting his typical behavior of creating smear campaigns against any truth-tellers as we speak." Defendant adds that "He knows what he has done is wrong. The question is, will he continue to deny it and abuse others in furtherance of decades long cover up?"

Dr. Amor has covered up nothing. Neither has he been a director of the Pennsylvania Renaissance Faire (Faire) for decades. Further, he had no control over Quinn's behavior, whatever it was. See Exhibit 2.

Dr. Amor was one of several directors with very little power to investigate and no ability to terminate anyone. *Id.*

In addition, Defendant's claims about a girl named Emily are things that Dr. Amor was never privy to during his tenure at the Faire.

Defendant stated that Plaintiff Amor was checking her blog daily, and Defendant shares a link to her blog "The Devil Who Rules The Pittsburgh Faire" and invites readers to view it.

On 12/01/21: (Conover120121FBa), Defendant's Facebook post states, "smear campaigns are always used to cover up the truth by hoping you'll fall for the misdirection and excuses." This

3

is a continuation of her earlier post of 11/27/21 discussing the smear campaign.

On 01/04/22: (Conover010422FBa) Defendant's Facebook post asks the question 'if someone claims you threaten people who work for you with firing if they talk to a specific person, would then telling the group to not speak to someone only prove that is true?'

Plaintiff Dr. Amor never threatened anyone with firing for speaking to a specific person. *Id.*

On 01/05/22: (Conover010522FBa) Defendant's Facebook post refers readers to her new blog "Information, Corroboration, and a Really Good Laugh," about the Christmas Party, her conversations with a current cast member, and the directors discussing what to do about Bri.

On 01/06/22: (Conover010622FBa), another of Defendant's Facebook posting refers to her blog "Information, Corroboration, and a Really Good Laugh." Defendant mentions that "abuse of the cast should never be tolerated, let alone decades of covering up rape and pedophilia for his friend." Defendant states that it seems "the person who commits the crime isn't the problem, the person who whistleblows is." This would appear to be a reference to the Complaint and Motion For Preliminary Injunction filed on December 30, 2021.

On 01/07/22 (Conover010722FBa), Defendant invites readers to view her latest blog, "Information, Corroboration, and a Really Good Laugh." and goes on to state Dr. Amor (JMA) has not done the RIGHT thing - admitting, apologizing, and changing, further claiming that Dr. Amor is doubling down and threatening employees if they dig for the truth.

Later that day, (Conover010722FBb) Defendant's second post refers to the trio that got her in trouble in 2019.

On 01/08/22: (Conover010822FBa) posts that holding people responsible for actions is not the same as holding grudges or seeking revenge.

4862-4393-3722, v. 1

On 01/09/22: (Conover010922FBa), another post from Defendant references her blog "Information, Corroboration, and a Really Good Laugh." "It's an update about Doc and the Pittsburgh and W.V. Festivals (abuse/rape/pedophilia)."

01/09/22: (Conover010922FBb) Defendant's post claims that someone (Dr. Marmor) who is accused of abhorrent behavior, complete with names, dates, and other details that are corroborated and whose defense is that people are "crazy/lying/mentally ill/out for revenge" is not telling the truth. It is evident that Dr. Marmor is Dr. Amor.

Dr. Amor has never called her or any "victim" crazy or lying or mentally ill or out for revenge in any public forum or in person. *Id.*

On 01/16/22: (Conover011622FBa) Defendant's Facebook post complains that someone has been lying about Defendant's words and actions on the festival circuit. Defendant justifies her "Crusade" against Dr. Amor and Quinn and explains why.

On 01/17/22: (Conover011722FBa) Defendant posts a link to a survey in which all the questions asked are related to issues Defendant feels Dr. Amor is doing to the casts at both festivals where he is a director.

On 02/09/22, the day Defendant was served with Plaintiffs' Complaint, and Motion for Preliminary Injunction, Defendant's Facebook posting (Conover020922FBa) states that Dr. Amor is running scared as he has sued Defendant for defamation. ( Note that this post has since been removed.)

Later that day (Conover020922FBb), a second post was about being served. Defendant posted an image of the Court document with the section stating she hopes to be able to work at other festivals. Defendant then states that she agrees with Bri that Dr. Amor should not be allowed to work in other cities at festivals and that Dr. Amor's wife makes "hideous carpet dresses."

5

On 02/19/22 (Conover021922FBa), Defendant posts that defamation, libel, and slander doesn't apply if it is the truth.

On 02/20/22: (Conover022022FBa), Defendant states that since Dr. Amor is trying to silence people year after year, he is proving that those people are telling the truth about him.

Later that day (Conover022022FBb) Defendant posts that she is constantly fighting the same "demon," which she describes as having the flaws she has found in Randal, Quinn, Bri, and Dr. Amor.

On 03/01/22: (Conover030122FBa) Defendant feels she is being played as the villain for telling the truthnd that people are turning against her.

Later that day (Conover030122FBb), Defendant laments that she reached out to someone who feels the same way about Dr. Amor as she does, and they ranted and raved against him.

Defendant files a third post specifically targeting Michael Menendez (likely the person who ranted and raved against her) and that he can go "F**K OFF."

On 03/02/22: (Conover030222FBa) Defendant defends her writing a blog as a way to work through things that happened to her.

On March 15, 2022, Defendant posted a letter where Defendant stated that she has simply published the allegations of Dr. Amor's friends and coworkers and has been sued for it regardless. Defendant thereby admits that she has no direct knowledge of any of the facts she wantonly published.

Defendant states that her son's birthday is March 18, 2022, and she refuses to miss that, no matter what state she is in. Defendant apparently, is not bedridden and can spend at least 2 hours going out to eat to celebrate her son's birthday. See Exhibit 1. This is at a time when she allegedly is unable to spend the same time being deposed.

Defendant accuses Counsel of assassinating her character because that is his only shot, and she can prove the information is not even from her. She states that 'damages do not matter if it is the truth-because you brought those on yourself with your own behavior. Own up to it.'

Defendant has promised to republish the blog when she is out of the hospital (which she obviously was by March 18, 2022).

It is clear, from the foregoing, that Defendant will continue, any which way she can, to defame the Plaintiffs. Plaintiffs need a TRO in place until the preliminary injunction can be heard.[1]

### III.    Legal Argument

#### A.    Plaintiffs request a TRO to preserve the status quo

Importantly, TROs are ordinarily aimed at temporarily preserving the status quo. "[U]nder federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*; *see also J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002) (concluding that interim relief preserving the status quo is not merit-based and acknowledging a TRO as a "stay put[ ] equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation" (quoting *Foreman v. Dall. Cty.*, 193 F.3d 314, 323 (5th Cir. 1999), *abrogated on other grounds by Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015) (internal quotation marks omitted))); *Christopher P. ex rel. Norma P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990) ("[T]he procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party

---

[1] Defendant has continued to be belligerent, uncooperative and insulting to Counsel. The Court has copies of this correspondence. Despite Defendant being pro se, it is submitted that this does not give her license to act in such a truculent and pugnacious manner.

status."); *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) ("The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." (citation omitted)).

The requirements for a temporary restraining order are the same as those for a preliminary injunction. *Saluck v. Rosner*, C.A. No. 98-5718, 2003 WL 559395, at *2 (E.D. Pa. Feb. 25, 2003). The Plaintiffs can establish (1) a likelihood of success on the merits, (2) that denial of injunctive relief will result in irreparable harm, (3) that granting the temporary restraining order will not result in irreparable harm to the defendants, and (4) that granting the TRO is in the public interest. *See Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1997). The primary purpose of a temporary restraining order and/or preliminary injunction is to preserve the status quo until a decision can be made on the merits. *Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3d Cir. 2020).

**B**.     **Discussion of Standard as Applied to the Facts and Law Herein**

First, the Plaintiffs can succeed on the merits. Defendant's accusations against the Plaintiffs for illegal conduct are inadmissible hearsay. Defendant admits that she has no direct knowledge of the immoral, unethical, and unlawful conduct she imputes to the Plaintiffs. Instead, she characterizes herself as a 'Reporter' describing what he has heard from others. In short, Defendant has no admissible or probative evidence to back up her defamatory statements. Whereas the Plaintiffs have submitted an affidavit (affidavit) specifically denying Defendant's accusations.

Based on the affidavit, the facts of the Complaint, Defendant's admissions, blogs, and Facebook posts establish more than a reasonable probability of success on the merits such that a TRO should issue. To establish a reasonable probability of success on the merits such that a TRO should issue, a "plaintiff need only prove a prima facie case, not a certainty that [it] will

win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001*); see also Reilly v. City of Harrisburg,* 858 F.3d 173, 179 (3d Cir. 2017) ("[The court does] not require at the preliminary stage a more-likely-than-not showing of success on the merits because a likelihood of success on the merits does not mean more likely than not.") (internal quotation marks omitted). Plaintiffs have met this burden with the allegations of the Complaint.

Second, the allegations of the Complaint and the relentless conduct of Defendant in repeating her allegations demonstrate that injunctive relief is necessary to prevent immediate and irreparable harm to Plaintiffs. Plaintiffs have shown, in their affidavit, that absent immediate injunctive relief, Defendant is likely to harm Plaintiffs' reputations irreparably. Given Dr. Amor's position as a practicing dentist, allegations of aiding and abetting rape, sexual harassment, or retaliating against a victim, would result in irreparable harm, something the Defendant seems intent on doing. Absent temporary injunctive relief, the Plaintiffs could be permanently damaged to the point where their reputations cannot be rehabilitated.

Third, the balance of harms clearly and strongly weighs in favor of Plaintiffs. Defendant will not be harmed in any significant manner by the requested TRO, but, as stated *supra*, Plaintiffs could be irreparably harmed if the TRO is not granted and Defendant is permitted to run amuck with Plaintiffs' standing in the community and with Dr. Amor's professional integrity as a dentist. If the Court were to deny Plaintiffs' motion, they might not be able to recover from the damages wrought by Defendant.

The final factor is the public interest. *Crissman v. Dover Downs entertainment Inc.* 239 F.3d 357, 364. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff. Nonetheless, district courts should award preliminary injunctive relief only upon

9

weighing all four factors." *AT & T v. Winback & Conserve Program,* 42 F.3d 1421, 1427 n. 8 (3d Cir.1994). In this case, the public interest would be protected by issuing the TRO since there is a public interest in enjoining defamatory statements, which can ruin a professional reputation.

### IV.    Conclusion

It is submitted that, upon balancing the TRO factors, each factor weighs in favor of granting the TRO. Accordingly, Plaintiffs respectfully request that the TRO be granted in accordance with the form of order attached hereto.

Respectfully submitted,

BY:  *Timothy M. Kolman*
Timothy M. Kolman, Esquire
Attorney for Plaintiffs
414 Hulmeville Avenue
Penndel, PA 19047
(215) 750-3134

April 3, 2022

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the Motion for Temporary Retraining Order and Form of Order to Granting Motion for Temporary Restraining Order was served upon the Pro Se Defendant, Courtney Conover this 3rd day of April 2022 via email at DAISY1080@MSN.COM, the email provided to the Court and ECF Filing.

        Respectfully Submitted,

        KOLMAN LAW, P.C.

        */s/ Timothy M. Kolman*
        Timothy M. Kolman, Esquire
        414 Hulmeville Ave
        Penndel, PA 19047
        (215) 750-3134
        Attorney for Plaintiffs