IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES MICHAEL AMOR**<br>**PATRICIA ELVIRA ARMOR** | |
| *Plaintiff*, | NO. 21-5574 |
| vs. | CIVIL ACTION |
| **COURTNEY CONOVER** | JURY TRIAL DEMANDED |
| *Defendant*. | |

**MEMORANDUM OF LAW SUPPLEMENTAL STATEMENT IN
OPPOSITION TO CONSIDERING PLAINTIFFS AS
<u>LIMITED PUBLIC FIGURES</u>**

I.     <u>Introduction</u>

Pursuant to this Court's instruction requesting the Plaintiffs to set forth why the Plaintiffs should not be considered limited public figures; the Plaintiffs submit this Memorandum of Law Supplemental Statement in Opposition to Considering Plaintiffs as Limited Public Figures. (ECF¶ 47.)

II.     <u>Factual Addendum</u>

The Plaintiffs attach two exhibits. Exhibit 1,which are the contracts of James M. Amor (Director-2018, 2019, 2021, 2022) and Patricia E. Amor (Director - 2022), as well as Christine Manns (Josina Topolino - 2022) and Scott Walton (Henry Tudor - 2022) showing that all Pittsburgh Renaissance Festival Entertainment Contracts for cast selected are independent contractors with limited duties. The second (Exhibit 2) is a notarized Affidavit from Christine

Manns, who is expected to testify in this case about the limited duties assigned to the Plaintiffs as independent contractors. This affidavit attests that the Plaintiffs' contracts are renewed yearly, as all cast members who are offered positions and the actors hired for the season. Doctor Amor has no control over the running and direction of The Pittsburgh Renaissance Festival. He is cast to play the role of a 'King' for the season, just as other cast members are offered various roles to play for the season. For example, "Carolyn Bailey", a milkmaid who walks through the town asking if anyone would like to try her Irish Cream is not a public figure for either Carolan's Irish Cream or Bailey Irish Cream, her namesake for the role.

Doctor Amor does not have actual power or the ability to arbitrarily make decisions regarding the festival. Decisions are made by majority vote, and Doctor Amor has no power to speak for the Pittsburgh Renaissance Festival or bind it by contract or otherwise. He is not a spokesperson for the Pittsburgh Renaissance Festival in public or private controversy. He has not been given any such authority.

Doctor Amor may appear in photographs, the same as all cast members and actors contracted for the season, they may be put onto the Facebook, seen in local medua I either print or television news clips/commercials, however no cast member hired with a seasonal contract is in control of the Pittsburgh Renaissance Festival advertising. All cast members and actors know these appearances and/or photographs are expected and come with play-acting roles in the Pittsburgh Renaissance Festival. Exhibit 1 delineates Doctor Amor's specific duties.

These two Exhibits demonstrate the limited power of the Plaintiffs when it comes to the Renaissance Festival. The Plaintiffs do not have the right to inject themselves into any public controversy on behalf of the Renaissance Festival.

### III. <u>Legal Standard</u>

#### A. <u>Plaintiffs are not Limited-Purpose Public Figures – They are Private Figures</u>

#### 1. <u>Application of the Case Law to the Plaintiffs' Case</u>

Plaintiffs have set forth a detailed analysis of all relevant case law on this issue and have applied it to the Plaintiffs' case.

In *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d. Cir 1977), the Court of Appeals held that a starting player for the Eagles constituted a limited-purpose public figure regarding his public contractual dispute with the Eagles following a career-ending injury. Another team traded the player to the Eagles in a well-publicized deal. The player suffered a career-ending injury during a game. The Eagles' team physician told a newspaper reporter the player had a potentially fatal condition. The player sued the paper and physician for defamation. the Third Circuit reasoned the player constituted a limited-purpose public figure because professional athletes "assume a position of public prominence," so their "contractual disputes ... command the attention of sports fans." The player "had been thrust into public prominence long before [the physician's] statements appeared" in the paper. The Court concluded the player constituted a limited-purpose public figure for the purposes of his "physical condition, his contractual dispute, and his retirement," because they concerned his "ability to play football." Amor has not assumed if a position of public importance. He is no more than an independent contractor. Further, he had no prominence prior to the dispute and no prominence thereafter.

In *Steaks Unlimited, Inc. v. Deaner* 623 F.2d 264 at 273–74 (3d.Cir 1980), the Third Circuit found a meat producer constituted a limited-purpose public figure regarding the quality of its highly advertised product. The meat producer held an "intensive" advertising and sales campaign promoting its sales of meat. A television reporter began investigating the quality of the meat after receiving complaints from purchasers. The reporter ran a negative story on the meat

producer's product, and the meat producer sued for defamation. The meat producer was found to be a limited-purpose public figure "for the purposes of the controversy giving rise to this litigation." It found the meat producer created a public controversy through its "intensive" advertising campaign of its meat. The meat producer "voluntarily injected itself" into the question of its meat's quality by "creat[ing] a controversy for the purpose of influencing the consuming public." In *Amor,* the Plaintiffs have sought no publicity, wage no media campaign, and have not thereby subjected themselves to criticism. The Plaintiffs have not voluntarily injected themselves into how the Pittsburgh Renaissance Fair is run and have neither the right, power, nor opportunity to do so.

In *Avins v. White* 627 F.2d 637 (3d Cir.1980), a law school founder who spearheaded a public push for accreditation constituted a limited-purpose public figure for purposes of the accreditation process. The founder created the Delaware Law School and sought its accreditation from the American Bar Association. The Association repeatedly denied accreditation to the School, attracting media attention, and causing "panic" among the School's graduates and students. The founder sued a consultant of the Association who handled accreditation for defaming him with negative comments about the accreditation process made during an event in front of a judge. The founder was held to be a limited-purpose public figure for the purpose of the School's "accreditation struggle." The founder voluntarily injected himself into the accreditation controversy as "creator, chief architect, and the first dean" of the School. The court held the founder "actively involved in every facet of the accreditation struggle"; he "played an affirmative and aggressive role in the accreditation process." In *Amor*, the Plaintiffs are not involved in, nor did they have any significant role in the administration, advertising, or management of the Pittsburgh Renaissance Fair.

In *Marcone v. Penthouse* 754 F.2d 1072, 1082 (3d. Cir 1985), an attorney who fraternized with gangsters and whom the United States had charged with drug-related offenses constituted a limited-purpose public figure regarding his alleged involvement in purchasing drugs. A Philadelphia attorney represented gangs. Penthouse Magazine reported the attorney contributed $25,000 to marijuana transactions. It further reported the United States criminally charged the attorney, but the charges were dropped because he cooperated with investigators. The attorney sued Penthouse for libel. The attorney was found to be a limited-purpose public figure regarding his "alleged involvement in the purchase and sale of illicit drugs." It reasoned the news media "widely reprinted" his indictment. His representation of the "notorious" gangs invited attention. The attorney invited public comment on his involvement with the gangs by meeting with gang leaders at their headquarters and going on weekend trips with them. The Court of Appeals concluded the attorney's voluntary association with the gangs, coupled with the "intense media attention he engendered," sufficed to establish his public figure status for his connection with illicit drug trafficking. In *Amor*, the Plaintiffs have invited no public comment on their involvement in the Pittsburgh Renaissance Fair, and nothing regarding their involvement has ever been reported.

In *McDowell v. Paiewonsky* 769 F.2d 942, 948 (3d Cir. 1985), an architect who worked on public projects constituted a limited-purpose public figure regarding a port authority director's conflict of interest in granting the architect public grants. An architect serviced numerous public building projects, including a high school. A senator with a talk radio show reported the director of the Port Authority had a conflict of interest in awarding construction projects to the architect because of their friendship. The senator criticized the director's hiring of the architect for public projects, claiming the architect poorly constructed various other projects. The architect sued the

senator for defamation. The Third Circuit found the architect constituted a public figure regarding the public controversy of the director's conflict of interest, the awarding of government contracts, and the expenditure of funds on the high school project. The architect's construction projects "had been the subject of considerable media attention" for years before they began. The architect's high school project had undergone two official investigations, causing "highly critical reports by the Attorney General and the United States Comptroller for the Virgin Islands." The Court of Appeals found the architect's acceptance of a high school project the media reported as "impossible" "almost inevitably put him into the vortex of a public controversy."

In *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988), a construction company owner who sought public attention constituted a limited-purpose public figure regarding his role in a criminal investigation of a corrupt labor secretary. Time Magazine reported a special prosecutor reopened an investigation into a former United States labor secretary. The special prosecutor's report "center[ed] on the charge," the secretary met with well-known mobsters to set up no-show jobs for mobsters outside the construction company owner's sites. The owner sued for defamation, alleging the Time report contained innuendo of criminality. The Third Circuit found the owner constituted a limited-purpose public figure because he campaigned for President Reagan, investigated the special prosecutor, wrote numerous letters to local publications complaining about the secretary's treatment, bragged about his association with the secretary in promotional materials, and his company worked exclusively on public projects. The owner's letter campaigns and investigation into the special prosecutor meant he "thrust himself into the controversy" surrounding the secretary. Our Court of Appeals concluded, "questions concerning Schiavone ... were in the public eye long before Time's challenged article appeared." Defendant can point to no affirmative act by either Plaintiff

publicly thrusting themselves into the affairs of the Pittsburgh Renaissance Festival, and Defendant's complaint cannot transform them into public figures simply because of alleged defamation.

Each of these persons became a limited public figure by stepping into the public light for purposes of the controversy. They assumed the risk of publicity in their communities when they did so. Plaintiffs, by contrast, have done nothing to voluntarily inject themselves into any public controversy, let alone one involving the allegations from Defendant. There has been no public controversy, as the Third Circuit has used and applied that term.

Limited-purpose public figures must "assume[ ] the risk" of public attention. There is no evidence that the Plaintiffs assumed any risk regarding the allegations against them. Plaintiffs do not assume the risk simply because a Defendant has made allegations that implicate their failure to discharge their administrative or managerial duties. The Supreme Court rejected limited-purpose public figure status to individuals who did nothing to draw attention to themselves. *Time, Inc. v. Firestone*, 424 U.S. 448, 454, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).

There are two justifications for supporting the higher standard of proof for limited-purpose public figures: (1) access to the media and, more importantly, (2) "the manner in which the risk of defamation came upon." *U.S. Healthcare, Inc., v. Blue Cross of Greater Philadelphia* 898 F.2d 914 at 938. (3d Cir. 1990). There is no media involvement in this case, and the defamation is only from the Defendant. There is no public issue that has been and is being debated.

This case does not implicate the primary policy aim undergirding the Supreme Court's *Sullivan* analysis: Our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Sullivan*, 376 U.S. at 270, 84 S.Ct.

710; *see also Gertz*, 418 U.S. at 340, 94 S.Ct. 2997 (citing the same provision of *Sullivan*). In any event, this interest must be weighed against an "individual's right to the protection of his own good name," which is "a concept at the root of any decent system of ordered liberty." *Gertz*, v. Robert Welch Inc., 418 U.S. at 341, 94 S.Ct. 2997 (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 92, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)). In this case, the good name of the Plaintiffs outweighs the allegations of the Defendant. As the Supreme Court disclaimed in *Gertz*, "it is often true that not all of the considerations which justify adoption of a given rule will obtain in each particular case decided under its authority." *Id.* at 344. The considerations supporting First Amendment protections for uninhibited public disputes are not implicated here.

### IV.    Conclusion

In light of the foregoing factual addendum and legal analysis, the Plaintiffs respectfully request this Court to designate the Plaintiffs as private figures.

Respectfully submitted,

KOLMAN LAW P.C.

*s/Timothy M Kolman*
Timothy M Kolman, Esquire

Date: October 10, 2022