IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MICHAEL AMOR, *et al.*, : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil No. 5:21-cv-05574-JMG |
| : | |
| COURTNEY CONOVER, : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                          **October 12, 2022**

**I.     OVERVIEW**

The parties have submitted multiple briefs, letters, and proffers on the issue of whether Plaintiffs in this action are limited purpose public figures. For the reasons stated herein, the Court finds as a matter of law that Plaintiffs are limited purpose public figures.

**II.    FACTUAL BACKGROUND**

Plaintiffs, Dr. James Amor and Ms. Patricia Amor, allege that Defendant, Ms. Courtney Conover, "deliberately, recklessly, and maliciously" published defamatory statements against Plaintiffs online. *See* Compl. at ¶ 22-23. These allegations arise following Defendant's participation in the Pittsburgh Renaissance Festival as a paying guest. *Id.* at ¶ 13. Plaintiffs Dr. Amor and Ms. Amor are both performance directors at the Pittsburgh Renaissance Festival. *See* ECF No. 107. In addition to his Renaissance Festival involvement, Plaintiff Dr. Amor is a dentist with a business practice located in Pennsylvania.  *See* Compl. at ¶ 5.

Defendant's statements allege that Plaintiffs refused to take seriously allegations that renaissance festival cast members/employees under their supervision committed sexual

misconduct against other renaissance festival cast members/employees, some of whom were minors under the age of 18 at the time of the alleged abuse. *See generally id.* According to Plaintiffs' Complaint, Defendant's statements further allege Plaintiffs "retaliated against said rape and/or sexual assault victims by, amongst other things, publicly humiliating them, calling them crazy, refusing to rehire them, and/or terminating them from employment." *Id.* at ¶ 15. Plaintiffs' allege Defendant first learned about allegations that a renaissance festival cast member/employee committed sexual assault in 2019, but did not post the allegations online until 2021. *See* ECF 109.

Plaintiff Dr. Amor has been Performance Director at the Pittsburgh Renaissance Festival since at least 2018. *Id.* According to Defendant, both Dr. Amor and Ms. Amor have been Performance Directors at the Pittsburgh Renaissance Festival since 2009.[1] Plaintiffs' interest and involvement in renaissance festivals/faires spans nationally. *See* Compl. at ¶ ¶ 12; 19. Plaintiffs were both past members of the Pennsylvania Renaissance Faire, and Dr. Amor and Ms. Amor have been employed as Cast Directors at the West Virginia Renaissance Festival since 2017. *See* ECF No. 107 (Ex. 2).[2] As Performance Directors at the Pittsburgh Renaissance Festival, Plaintiffs

---

[1] Defendant's additional argument e-mailed to the Court and Plaintiffs on October 6, 2022 avers, with supporting exhibits "D2" and "D3", that Dr. Amor and Ms. Amor have served as Performance Directors at the Pittsburgh Renaissance Festival since July 2009. This Court's Ordered dated October 7, 2022 ordered Plaintiffs, "in light of the supporting evidentiary proffers submitted by Defendant via e-mail on October 6, 2022, and via docketed filings (*See* ECF Nos. 40, 52, 71)" to, among other items, "state any argument as to why this Court should not take judicial notice of the exhibits and supporting evidentiary proffers on the issue [of Plaintiffs' status as limited purpose public figures] submitted by Defendant at the parties' Final Pretrial Conference, via e-mail submission on October 6, 2022, and via docketed filings (*See* ECF Nos. 40, 52, 71)." *See* ECF No. 105. Plaintiff's corresponding Memorandum of Law filed in response on October 10, 2022 does not address why this Court should not take judicial notice of Defendant's factual and/or evidentiary proffers on the issue. Accordingly, the Court takes judicial notice of these publicly available facts.

[2] *See also supra* footnote 1, Defendant's additional argument e-mailed to the Court and Plaintiffs on October 6, 2022 avers, with supporting exhibits "D2" and "D3", that Dr. Amor and Ms. Amor have been the Cast Directors at the West Virginia Renaissance Festival since 2018; *see also* ECF No. 52.

oversee the cast and have considerable influence over decisions to hire cast performers/members in the renaissance faire. *See* ECF No. 107 (Ex. 2 - Affidavit of Christine Manns); ECF No. 71 (Ex. 15). According to the Affidavit of Christine Manns submitted by Plaintiffs, Dr. Amor holds casting auditions each year with "his team of assistant directors." *See* ECF No. 107 (Ex. 2 - Affidavit of Christine Manns). Indeed, "casting decisions are made by the owners [of the renaissance festival/faire] in discussion with James 'Doc' Amor." *Id*. Moreover, notification to a cast member that they were not offered a contract for the next season has been sent by Dr. Amor on at least one previous occasion. *See* ECF No. 71 (Ex. B). Further, an advertisement for the "Pittsburgh Renaissance Festival Auditions for 2022 Season" directs interested applicants to e-mail Dr. Amor with any questions.[3]

In addition to their roles as performance directors, Plaintiffs Dr. Amor and Ms. Amor are cast as the "King" and "Queen" respectively at both the Pittsburgh Renaissance Festival and the West Virginia Renaissance Festival. *See* ECF No. 107 (Ex. 2 - Affidavit of Christine Manns). Plaintiffs have been featured in the national "Renaissance Magazine" and have represented the Pittsburgh Renaissance Festival in the local news network, WPXI's, Christmas/Holiday Parade in their roles as "King" and "Queen." *See* ECF Nos. 52, 71. Plaintiffs are heavily featured in their roles as "King" and "Queen" in photographs and posts on the Pittsburgh Renaissance Festival Facebook page, which has approximately 30,000 "likes," and Defendant asserts that Plaintiffs operate another Facebook page titled "King Henry and Queen Anne of Morelandshire Pgh Renfest" which has approximately 1,000 "followers" on Facebook. *See* ECF No. 52.[4] Accordingly,

---

[3] *See also supra* footnote 1, Defendant's additional argument e-mailed to the Court and Plaintiffs on October 6, 2022 avers, with supporting exhibit d13.

[4] *See also supra* footnote 1, Defendant's additional argument e-mailed to the Court and Plaintiffs on October 6, 2022 avers, with supporting exhibit d5, that Plaintiffs control a Facebook page titled "King Henry and Queen Anne Morelandshire Pgh Renfest" that has approximately "1.2k followers" on Facebook.

"[b]ecause of his dentistry practice and his position as Performance Director at the Pittsburgh Renaissance Faire and other such 'Faires,' Dr. Amor has a high profile on numerous Internet sites." *See* Compl. at ¶ 18.

### III. PROCEDURAL BACKGROUND

On June 3, 2022, Defendant filed a Motion to Consider Plaintiffs Limited Purpose Public Figures (ECF No. 40) along with numerous supporting exhibits. Plaintiffs submitted a response in opposition on June 7, 2022. *See* ECF No. 47. The Court determined there were not sufficient facts from which to decide the issue. *See* ECF No. 65. Accordingly, on July 25, 2022, this Court denied Defendant's Motion "without prejudice to Defendant's right to request a jury instruction on the limited purpose public figure doctrine at trial." *Id.*

Defendant requested a limited purpose public figure jury instruction in Defendant's Pretrial Memorandum (ECF. No. 72) along with supporting exhibits on September 9, 2022, and renewed such request at the Final Pretrial Conference on October 5, 2022.  At the Final Pretrial Conference, the Court advised the parties it was considering the issue of whether Plaintiffs are limited purpose public figures. On October 6, 2022, Defendant e-mailed additional argument and exhibits in support of Defendant's argument that Plaintiffs' are limited purpose public figures.[5] On October 7, 2022, this Court ordered Plaintiffs to submit a written summary of their argument as to why this Court should not determine Plaintiffs to be limited purpose public figures. *See* ECF No. 105. In response, Plaintiffs filed a Supplemental Memorandum of law in Opposition to Considering Plaintiffs as Limited Purpose Public Figures along with supporting exhibits on October 10, 2022. *See* ECF No. 107. On October 11, 2022, Plaintiff submitted an additional letter to the Court in

---

[5] The Court considers Defendant's briefing via e-mail submission to the Court, which copied Plaintiffs' counsel, in consideration of the "liberal treatment traditionally afforded pro se litigants." *Hill v. Barnacle*, 751 Fed. Appx. 245, 250 (3d. Cir. 2018).

opposition to considering Plaintiffs as limited purpose public figures. *See* ECF No. 110.

**IV. DISCUSSION**

    **a. Legal Standard**

"The question of whether a plaintiff is a public or private figure is a question of law to be decided by the Court." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 498 (E.D. Pa. 2010). "[W]hether a plaintiff is a limited-purpose public figure is a…difficult and fact-specific question." *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 455 (E.D. Pa. 2021) (quoting *Woods Servs. v. Disability Advocates, Inc.*, No. 18-296, 2018 U.S. Dist. LEXIS 77752, 2018 WL 2134016 at *6 (E.D. Pa. May 9, 2018)). As a result, courts typically defer determination of a plaintiff's "status as a public or private figure" to the later stages of litigation, after "a full factual record can be developed." *Id.* (quoting *Woods Servs.*, 2018 U.S. Dist. LEXIS 77752, 2018 WL 2134016 at *6).

"In a defamation action, the designation of an individual as a limited purpose public figure has significant ramifications: whereas a private individual need only prove negligence on the part of the defendant to prevail, a limited purpose public figure must establish actual malice by the defendant." *Scott v. Lackey*, No. 1:02-cv-1586, 2012 U.S. Dist. LEXIS 73739 at *9 (M.D. Pa. May 29, 2012). This distinction between private individuals and limited purpose public figures is justified on two grounds: "First is the rationale of self-help," as public figures have "greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *McDowell v. Paiewonsky*, 769 F.2d 942, 947-48 (3d. Cir. 1985) (quoting *Gertz v. Robert Welch*, 418 U.S. 323, 344 (1974)). "Second, and perhaps more important, is the notion of assumption of the risk. Public officials and public figures in some sense voluntarily put themselves in a position of greater public scrutiny and thus assume the risk that disparaging remarks will be negligently made about them." *Id.* at 948

(quoting *Gertz*, 418 U.S. at 344-45).

The Third Circuit has set forth a two-part inquiry for determining whether a defamation plaintiff is a limited purpose public figure: "The court must consider (1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." *McDowell v. Paiewonsky*, 769 F.2d 942, 948 (3d. Cir. 1985).

### b. Plaintiffs' Are Limited Purpose Public Figures

First, the Court must determine whether the alleged defamation involves a public controversy. Defining public controversy has proven difficult for courts.[6] While the Third Circuit has not explicitly defined what constitutes a public controversy, it has found that "a public controversy must be a real dispute, the outcome of which affects the general public or some segment of it…[t]o be 'public,' the dispute must affect more than its immediate participants." *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1083 (3d. Cir. 1985) (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980). *See, e.g., id.* (holding that allegedly defamatory statements concerning large scale drug trafficking, "one of the most troubling issues of our time, surely falls within the ambit of public controversy."); *Avins v. White*, 627 F.2d 637, 648 (3d Cir. 1980) (holding that allegedly defamatory comments regarding law school dean's behavior during accreditation process concerned a public controversy because the law school's accreditation efforts "affected the general public or some segment of it in an appreciable way") (quoting *Waldbaum*, 627 F.2d at 1296).

Courts in our circuit have applied this standard to hold allegations of sexual misconduct constitute a public controversy "even when the controversy is 'relevant to only residents of the

---

[6] *See Ralston v. Garbedian*, No. 19-1539, 2021 U.S. Dist. LEXIS 244741 at *36 (E.D. Pa. Dec. 23, 2021) ("The proper dimensions of the public controversy requirement have proven difficult to diagram.") (quoting *Marcone*, 754 F.2d at 1083 n.7.)

local community.'" *Ralston*, 2021 U.S. Dist. LEXIS 244741 at *37 (E.D. Dec. 23, 2021) (quoting *Smith v. A Pocono County Place Prop. Owners Ass'n, Inc.*, 686 F. Supp. 1053, 1058 (M.D. Pa. 1987)). In *Ralston*, the court held it was "not difficult" to determine that allegations a teacher sexually abused a former student involved a public controversy, which the court defined as "the extent of…historical allegations of sexual abuse" at a high school. *Id.* at *36. Similarly, in *Mzamane v. Winfrey*, the court held that "[t]he safety and well-being of seventh and eight grade students in receiving a quality education without being subjected to mistreatment is a matter of legitimate public concern." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 500 (E.D. Pa. 2010). While the allegedly defamatory statements in *Mzamane* concerned a school headmistress's failure to protect minor students from sexual abuse at the Oprah Winfrey Leadership Academy for Girls ("OWLAG"), the court did not consider Ms. Winfrey's celebrity in making its public controversy determination. *Id.* at 503. The court held that "the question of what the administration of the school knew at the time or if they failed to protect children against abusive treatment…was ripe for public comment, regardless of Winfrey's involvement in the case." *Id.* Critically, the court further held:

> The public figure inquiry is not concerned with the intensity of the public attention garnered by an issue. Instead, it focuses on whether the matter is one that is the subject of public comment and affects more than the immediate participants regardless of the degree of preeminence the issue generates.

*Id.*

Here, the controversy at issue can be characterized as such: broadly, allegations of sexual misconduct in the workplace, and specifically, allegations of sexual misconduct against minors, allegedly perpetrated by Pittsburgh Renaissance Festival employee(s). This is a public controversy. Broadly, the issue of sexual misconduct in the workplace is, as with the issue of large-scale drug trafficking in *Marcone*, "one of the most troubling issues of our time" and therefore "surely falls within the ambit of public controversy." *Marcone*, 754 2d. at 1083. Specifically, allegations of

sexual misconduct against minors perpetrated by a renaissance festival employee(s) is a matter of legitimate public concern. Whether renaissance festival cast members/employees who work in a public facing event and performance, which is often attended by families and minor children, have committed sexual misconduct against minors is an issue that affects not just the employees who are the subject of the allegations, but the public who attends the event. Because these allegations of sexual misconduct in a public workplace are relevant to members of the local community, this Court finds that a public controversy exists.

Second, the Court must evaluate the nature and extent of Plaintiffs' involvement in the controversy. In analyzing this prong, this Court evaluates the dual considerations behind the distinction between private individuals and limited purpose public figures: the "rationale of self-help" and, more importantly, "the notion of assumption of the risk." *McDowell*, 769 F.2d 942, 947-48 (3d. Cir. 1985) (quoting *Gertz*, 418 U.S. 323, 344-45). With respect to the first consideration, Plaintiffs' contend "[t]here is no media involvement in this case." *See* ECF No. 107. Even accepting this assertion as true, this has no bearing on whether the Plaintiffs' have the *ability* to appropriately respond through media channels to Defendant's allegations. This Court does not find facts in the record indicating that Plaintiffs have direct access to news media, nor that they have issued a press release on the issue. However, Plaintiffs' considerable social media following, along with Plaintiffs' own assertion that Dr. Amor has "a high profile on numerous Internet sites," militates toward a finding that Plaintiffs have at least somewhat of a "greater access to channels of effective communication" than purely private individuals. *Gertz*, 418 U.S. at 344.

The Court now considers the more significant consideration of whether the "Plaintiff voluntarily assumed the risk of attracting public attention." *Mzamane*, 693 F. Supp. 2d at 502. In *Chuy v. Philadelphia Eagles Football Club*, the Third Circuit held that by assuming the role of

a professional football player, Don Chuy of the Philadelphia Eagles "was a limited purpose public figure with respect to statements regarding the effect of his medical condition on his ability to play football." *Mzamane*, 693 F. Supp. 2d at 502 (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1290 (3d. Cir. 1979)). Similarly, the court in *Mzamane* held that by accepting the role of headmistress at a unique and innovative private school, the plaintiff qualified as a limited purpose public figure "with respect to statements involving the administration [of the school] as it relates to the safety and treatment of the students." *Id.* at 505. The plaintiff's "status as Headmistress invited public comment about her performance in executing her responsibilities for overseeing the development and well-being of the students, whether good or bad." *Id.* The court held that, "[h]aving voluntarily joined a novel and innovative educational institution which was bound to attract public attention...Plaintiff became limited public figure under the First Amendment." *Id.*

Plaintiff Dr. Amor invited public comment about his performance in executing his responsibilities as Performance Director of an event that invites public attention and attendance, the renaissance festival. Dr. Amor, by his own admission, "has a high profile on numerous Internet sites" in part due to his role as Performance Director of the Pittsburgh Renaissance Festival and his involvement in other renaissance faires. *See* Compl. at ¶ 18. Other considerations support a finding that Plaintiffs have a "high profile." Dr. Amor and Ms. Amor publicly portray the "King" and "Queen" and the Pittsburgh and West Virginia Renaissance Festivals and have marched in the local Pittsburgh news station's Christmas/Holiday Parade. The Amors have been featured in the national "Renaissance Magazine" and attract significant attention on social media related to their involvement in renaissance festivals across the region. Plaintiff Ms. Amor is also a Performance Director at the Pittsburgh Renaissance Festival, and consistently appears with Dr. Amor at

renaissance festivals and related events.[7]

By assuming high-profile leadership positions for a public event that gave them authority to direct and lead cast members, as well as to exert influence in personnel decisions, Plaintiffs assumed the risk of public comment about their performance and execution of these responsibilities. Allegations that Plaintiffs failed to take seriously claims that cast members/employees under their supervision committed sexual misconduct are precisely the type of public comment about their performance that Plaintiffs invited by assuming these roles. The Court therefore finds that Plaintiffs' are limited purpose public figures for the purposes of this action.

## V.     CONCLUSION

The Court finds that Plaintiffs Dr. James Amor and Ms. Patricia Amor are limited purpose public figures as a matter of law. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[7] *See Burns v. Times Argus Ass'n*, 430 A.2d 773 (Vt. 1981) (holding wife of lieutenant governor who attended political events and campaigned with and for her husband was limited purpose public figure with respect to activities involving her husband's political position).