**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| JAMES MICHAEL AMOR, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-05574-JMG |
| | : | |
| COURTNEY CONOVER, | : | |
| Defendant. | : | |

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                 **August 18, 2023**

## I.       OVERVIEW

In this case, the Court must decide whether defamation damages sustained by Plaintiffs, the King and Queen of a Renaissance Faire, cut to the bone, or are merely "just a flesh wound."[1]

Here, Plaintiffs accused the Defendant of defamation, for publishing online accusations about Plaintiffs in their capacities as renaissance faire performance directors. After a jury found for Plaintiffs, Defendant now seeks to vacate the judgment and $1.4 million damages award assessed by the jury. Because a reasonable jury, making its own determinations as to credibility of witnesses, and applying the applicable legal standard, could have found for the Plaintiffs in this action, Defendant's motion will be denied insofar as it seeks to completely vacate the judgment or award of damages. However, because the jury's damages award was unreasonably excessive in light of the evidence presented at trial, the total damages award is remitted to $71,500.

For the reasons that follow, the Court remits the compensatory damages award to Plaintiff Dr. James Amor from $750,000 to $50,000, the punitive damages award to Plaintiff Dr. James

---

[1] *See* Jones, T., & Gilliam, T. (1975). Monty Python and the Holy Grail. Cinema 5 Distributing.

Amor from $250,000 to $1,000, the compensatory damages award to Plaintiff Ms. Patricia Amor from $300,000 to $20,000, and the punitive damages award to Plaintiff Ms. Patricia Amor from $100,000 to $500.

## II.    BACKGROUND

Plaintiffs, Dr. James Amor and Ms. Patricia Amor, initiated this defamation action by filing a complaint on December 30, 2021, alleging pro se Defendant, Ms. Courtney Conover, "deliberately, recklessly, and maliciously" published defamatory statements against Plaintiffs online. *See* Compl. at ¶ 22-23. Plaintiffs, Dr. Amor and Ms. Amor, both worked as assistant directors at the Pennsylvania Renaissance Faire, and performance directors at the West Virginia and Pittsburgh Renaissance Faires. *See* Trial Transcript ("T. Tr."), October 13, 2022, at 228:13-15 [ECF No. 136]. As performance director, Dr. Amor testified his responsibilities are to supervise the Renaissance Faire cast/actors, as well as coordinate with independent or national acts that participate in the Faire as well. *Id.* at 229:6-19. In addition to his Renaissance Festival involvement, Plaintiff Dr. Amor is a dentist with a business practice located in Pennsylvania. *See* Compl. at ¶ 5.

Defendant, Ms. Conover, was a paying guest at the Pittsburgh Renaissance Festival who maintained an online blog where she wrote about, among other topics, Plaintiffs. *See* T. Tr., October 13, 2022, at 125:8-19 [ECF No. 134].

The blog statements in question claim the Plaintiffs refused to take seriously allegations that renaissance festival cast members/employees under their supervision committed sexual misconduct against other renaissance festival cast members/employees, some of whom were minors under the age of 18 at the time of the alleged abuse. *See generally* Compl. According to Plaintiffs' Complaint, Defendant's statements further allege Plaintiffs "retaliated against said rape

and/or sexual assault victims by, amongst other things, publicly humiliating them, calling them crazy, refusing to rehire them, and/or terminating them from employment." *Id.* at ¶ 15.

On October 12, 2022 the Court determined Plaintiffs were limited purpose public figures. *See* ECF Nos. 111, 112. The case proceeded to a jury trial commencing on Thursday, October 13, 2022. *See* ECF No. 114. After the conclusion of all testimony, the jury rendered a verdict for Plaintiffs on Tuesday, October 18, 2022. *See* ECF Nos. 120, 123. The jury found Defendant liable to Plaintiff Dr. Amor for defamation, and awarded Dr. Amor $750,000 in compensatory damages and $250,000 in punitive damages. ECF No. 123. The jury also found Defendant liable to Plaintiff Ms. Amor for defamation, and awarded Ms. Amor $300,000 in compensatory damages and $100,000 in punitive damages. *Id.* In total, the jury assessed $1,050,000 in compensatory damages and $350,000 in punitive damages against Defendant, or a total of $1.4 million. Defendant, Ms. Conover, did not file any Rule 50 motions prior or subsequent to the case's submission to the jury.

However, Defendant filed a Motion to Amend Order and Judgment (ECF No. 121) pursuant to Federal Rule of Civil Procedure 59(e) on October 18, 2022, seeking to vacate the judgment and damages award. Defendant's Motion contends the jury verdict in favor of Plaintiffs is not supported by the evidentiary record, both as to liability, and the jury's award of compensatory and punitive damages. [ECF No. 121]. Plaintiffs filed a Response in Opposition on October 26, 2022. [ECF No. 128]. Defendant filed a Rebuttal to Opposition to Motion to Amend Order and Judgment on October 27, 2022. [ECF No. 130].

## III.   LEGAL STANDARD

"Under Rule 59(e), a party may seek alteration or amendment of the verdict." *Taha v. Bucks*

*Cty. Pa.*, 408 F.Supp. 3d 628, 637 (E.D. Pa. 2019). The scope of a motion brought under Rule 59(e) is "extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). Rule 59(e) motions are "not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* "In order to be entitled to relief under Rule 59(e), the movant must either present 'new evidence' not previously available, point to 'an intervening change in controlling law,' or show 'the need to correct a clear error of law or prevent manifest injustice.'" *In re Doe*, 681 Fed. Appx. 106, 108 (3d Cir. 2017) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011)).

## IV. DISCUSSION

### a. Liability: The Court Declines to Disturb the Jury's Verdict that Defendant Defamed Plaintiffs

Defendant's Motion asks this Court to reverse the jury's verdict and "determine this case in favor of the Defendant." *See* ECF No. 121 at pg. 1 of 4. Defendant does not point to a change in controlling law or newly available evidence, but rather contends there was no evidence presented by Plaintiffs during the course of the trial to satisfy the applicable standard of proof in this action. *Id.* at pg. 2 of 4. The Court therefore construes Defendant's motion as seeking relief pursuant to Rule 59(e) on the grounds that there is "need to correct a clear error of law or prevent manifest injustice." *In re Doe*, 681 Fed. Appx. at 108. *See also Nissim v. McNeil Consumer Prods. Co.*, 957 F. Supp. 600, 601 (E.D. Pa. 1997) (determining movant's Rule 59(e) arguments that "the jury finding of liability…but its failure to award damages 'is unjust and anomalous'" implicated the "need to correct a clear error of law or prevent manifest injustice" prong of a Rule 59(e) motion).

This Court's October 12, 2022 ruling determined Plaintiffs are limited purpose public

figures with regard to the instant action. *See* ECF Nos. 111, 112. As such, to prevail on their defamation claims at trial, Plaintiffs were required to "prove by clear and convincing evidence the defendant defamed [them] with 'actual malice.'" *Ralston v. Garabedian*, No. 19-1539, 2021 U.S. Dist. LEXIS 244741 at *34 (E.D. Pa. Dec. 23, 2021). A defamation defendant acts with "actual malice" when they publish a statement with either "(1) knowledge of its falsity; or (2) reckless disregard to its truth or falsity." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 506 (E.D. Pa. 2010). At trial, the Court correctly instructed the jury as to this standard:

> On one issue only, you're going to hear that you will apply a different evidentiary standard than the preponderance of the evidence. This different evidentiary standard is called clear and convincing evidence. You will apply this standard of evidence to determine whether Ms. Conover published the communications either with knowledge of their falsity or with reckless disregard for whether they were true or false.

T. Tr., October 18, 2022, at 53:15-22 [ECF No. 136].

Plaintiffs allege that Defendant, through her blog and social media postings, published false and defamatory statements concerning Plaintiffs. Among the evidence introduced by Plaintiffs were statements published online by Defendant: referring to Plaintiff Dr. Amor as "the devil," and "a human monster"[2]; accusing Plaintiff Dr. Amor of attacking a victim of sexual misconduct and "gaslight[ing]" her[3]; claiming Plaintiff Dr. Amor told this same victim that "she was a liar" and he "would not even begin to entertain her 'crazy false accusations'"[4]; stating that Plaintiff Dr. Amor "has been aiding and abetting a pedophile for two decades"[5]; and that Dr. Amor engaged in "consistent verbal abuse and threats" toward Renaissance Faire cast members under his supervision and made "fat jokes…stupid jokes, racist jokes, and autism jokes" in the presence of

---

[2] T. Tr., October 18, 2022, at 130:2-3; 179:10-12 [ECF No. 136]; Plaintiffs' Trial Exhibit P2.
[3] Plaintiffs' Trial Exhibit P2
[4] *Id.*
[5] Plaintiffs' Trial Exhibit P3.

cast members.[6] Defendant's published statements also claim Plaintiff Dr. Amor verbally and physically abused his wife, Plaintiff Ms. Amor.[7]

Plaintiffs also introduced evidence that Defendant published statements online accusing Plaintiff Ms. Amor of requiring a victim of sexual assault to work with her alleged abuser at the renaissance faire, and claiming that Ms. Amor told the victim she "was being immature and dramatic" for refusing to work with her abuser, and that she should "get over it."[8] When the victim told Ms. Amor she had been raped, Defendant wrote that Ms. Amor laughed and told the victim she was "crazy" and should go home.[9]

Here, the jury found these statements were false and defamatory, and that, by clear and convincing evidence, were published by Defendant with knowledge of their falsity or reckless disregard for whether they were true or false. *See* ECF No. 123. Absent "exigent circumstances such as a case of manifest and extreme abuse of the jury's function," the court may not disturb the jury's verdict. *Nissim*, 957 F. Supp. at 601 (quoting *Pearsall v. Emhart Indus., Inc.*, 599 F. Supp. 207, 211 (E.D. Pa. 1984)). If there exists any reasonable basis to uphold a jury's verdict, the court must do so. *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). In evaluating Defendant's request to reverse the jury's verdict, the Court "must search the record for any evidence which could have reasonably led the jury to reach its verdict, drawing all reasonable inference[s] in favor of the verdict winner." *Id.* "Jury verdicts can be overturned only if the record fails to contain the minimum quantum of evidence from which the jury could have rationally reached a verdict." *GE v. Deutz AG*, 270 F.3d 144, 155 (3d Cir. 2001).

Here, because a rational jury could find from the evidence introduced at trial that Plaintiffs

---

[6] Plaintiffs' Trial Exhibit P2.

[7] Id.

[8] *Id.*

[9] *Id.*

satisfied their defamation burden of proof, the Court must let the jury's verdict as to liability stand. Defendant argues the evidence showed she did not knowingly lie during the publication of her statements in question or have serious doubts about their truth at the time of publication – and to a reasonable observer, that may be so. *See* Motion to Amend Order and Judgment [ECF No. 121]. But the question here in deciding whether to take the extreme and rare remedy of reversing the jury's verdict is not whether the evidence in the record "***could*** support…a contrary finding," but just "whether the record contains a '***minimum quantum*** of evidence'" from which the jury could have reasonably found for Plaintiffs. *Agere Sys. v. Atmel Corp.*, No. 02-cv-864, 2005 U.S. Dist. LEXIS 18563 at *42 (E.D. Pa. Aug. 17, 2005) (quoting *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir. 1976)) (emphasis added). The Court finds that it does.

The jury heard testimony from Plaintiff witnesses, such as Christine Manns, an assistant director with the Pittsburgh Renaissance Festival, opining the Festival was properly investigating sexual misconduct claims. T. Tr., October 13, 2022, at 42:13-14, 61:25-62:10 [ECF No. 134]. Indeed, Manns testified that Defendant's published statements accusing Plaintiffs of covering up sexual assault were false. *Id.* at 63:3-64:1. Manns testified that Defendant's published statements accusing Plaintiffs of retaliating against those who reported sexual misconduct were false. *Id.* at 74:8-15. Moreover, Plaintiff Dr. Amor offered testimony that he was unaware of the sexual misconduct allegations that Defendant alleged he deliberately covered up. *Id.* at 222:3-11. Dr. Amor also testified he did not cover up allegations of sexual misconduct against employees under his supervision. *Id.* at 222:22-223:1; 226:3-6. The jury also heard Plaintiff Ms. Amor testify that Plaintiff Dr. Amor has never physically assaulted her during their marriage. T. Tr., October 14, 2022, at 246:24-247:1 [ECF No. 135].

The jury also heard testimony from witness Brianna Kube, a former renaissance faire cast

member who worked closely with Plaintiffs, and who was a purported source for much of Defendant's published accusations against Plaintiffs. Kube testified that she never heard anything to suspect Plaintiffs covered up sexual misconduct or pedophilia. *Id.* at 95:16-22; 166:4-15; 173:21-22; 183:12-14. Kube also testified Defendant's published allegations against Plaintiffs were false. *Id.* at 103:25-104:2. Indeed, Defendant herself admitted at trial that one of the statements at issue that she published turned out to be false. *Id.* at 178:19.

The jury also heard testimony that Defendant had a previous romantic relationship and friendship with Mr. Harlan Quinn, a man who, according to the Defendant's published statements at issue, committed sexual misconduct which was then covered up and/or aided and abetted by Plaintiffs. *Id.* at 146:22-147:2; 148:8-149:25; 163:8-21.

Though the aforementioned evidence is not exhaustive, and Defendant my fairly argue she presented evidence countering that which was offered by Plaintiffs, a reasonable jury, making its own determinations as to credibility of witnesses and applying the applicable legal standard, could have found for the Plaintiffs in this action.

### b. Damages: The Trial Record Does Not Support the Jury's $1.4 Million Damages Award; Remittitur of Damages is Appropriate

In the alternative, Defendant's Motion seeks to alter/amend the verdict amount, otherwise known as remittitur. *See Taha*, 408 F.Supp. 3d at 637; *Castagna v. W. Mifflin Area Sch. Dist.*, No. 2:18-cv-00894, 2023 U.S. Dist. LEXIS 40273 at *1 (W.D. Pa. Feb. 10, 2023). "The use of remittitur 'clearly falls within the discretion of the trial judge, whose decision cannot be disturbed…absent a manifest abuse of discretion.'" *Evans v. Port Auth. N.Y. & N.J.*, 273 F.3d 346, 354 (3d Cir. 2001) (quoting *Spence v. Bd. of Educ. of the Christina Sch. Dist.*, 806 F.2d 1198, 1200 (3d Cir. 1986)). "The district judge is in the best position to evaluate the evidence presented and

determine whether or not the jury has come to a rationally based conclusion." *Id.* (quoting *Spence*, 806 F.2d at 1201). Therefore, when a "District Court has decided that remittitur is appropriate," the Third Circuit "accord[s] that decision additional deference." *Id.*

"[I]n considering a motion for remittitur, the Court exercises its discretion to determine whether the jury's decision 'is clearly unsupported and/or excessive.'" *Castagna*, 2023 U.S. Dist. LEXIS 40273 at *5 (quoting *Spence*, 806 F.2d at 1201). For a damages award to stand, "[t]here must be a rational relationship between the specific injury sustained and the amount awarded." *Gumbs v. Pueblo International, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987). As to an award of punitive damages, "[w]hether sufficient evidence exists to support an award of punitive damages is a question of law for the Court." *Moore v. Susquehannah Area Reg'l Airport Auth.*, No. 1:02-cv-0535, 2005 U.S. Dist. LEXIS 45023 at *24 (M.D. Pa. Sept. 30, 2005).

Where a damages award is based on intangible harm, district courts look to compare the award to other damages awards for similar injuries. *Smith v. Katz*, No. 2010-39, 2013 U.S. Dist. LEXIS 40804 at *46 (D. V.I. Mar. 22, 2023). The court's review of Defendant's request for remittitur is not limited to comparison with other cases, however, as the issue to be decided "is not the size of the award alone, but the **evidence** supporting the award." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 354 (3d Cir. 2001) (quoting *Blakely v. Continental Airlines, Inc.*, 922 F. Supp. 731, 737 (D. N.J. 1998)) (emphasis added).

Defendant argues there was "no evidence presented, of any kind, that led to the significant compensatory dollar amounts given to the Plaintiffs in the judgments. The testimony of Dr. Amor stated that he could only 'guess' that the Defendant had played a role in his financial difficulties at best." Motion to Amend Order and Judgment [ECF No. 121]. In response, Plaintiffs vaguely argue that "an individual's interest in his reputation has been described as a 'valuable asset in one's

business or profession.'" Brief in Opposition at pg. 5 of 9 [ECF No. 128-1] (quoting *Fitzpatrick v. Milky Way Prods., Inc.*, 537 F. Supp. 165, 171 (E.D. Pa. 1983)). The purpose of defamation law, Plaintiffs argue, "is to compensate an individual for pecuniary harm to one's reputation inflicted by a defamatory statement." *Id.* Although Plaintiffs, limited purpose public figures who prevailed on their defamation claims under the "actual malice" standard, are entitled to presumed damages, they are not entitled to **excessive** damages unsupported by the evidentiary record. *LabMD Inc. v. Boback*, 47 F.4th 164, 186 (3d Cir. 2022); *Prendeville v. Singer*, 155 Fed. Appx. 303, 305 (9th Cir. 2005) ("A court, nonetheless, retains discretion to grant a new trial for excessive damages where the amount of presumed damages awarded is wholly unsupported by the evidence presented.").

At trial, Plaintiffs offered very limited and vague evidence of damages. Plaintiff, Dr. Amor, testified the Defendant's published statements could hypothetically harm his reputation and business because "I am dealing in a position [as a dentist] where I have a certain amount of public trust in my ethics, my morals, and my abilities, basically. And if those things are brought into question I can lose the confidence of my patients in what I do, and also if we're dealing with actual accusations of criminal activity, that's a violation of moral code in the dental code, and basically the State Board of Dentistry can pull my license. The accusations of assault of a minor, by law I am a required reporter of any sort of child abuse in the state of Pennsylvania. If I know the victim I must report suspected child abuse to the State." T. Tr., October 13, 2022, at 219:21-220:6 [ECF No. 136].

Dr. Amor testified that he suffered emotional injuries as a result of Defendant's defamatory statements. Dr. Amor stated he now has "a much tighter and small circle of friends" and does not sleep as well at night. *Id.* at 233:22-234:6. Dr. Amor testified he sought and obtained medication to treat his new difficulty sleeping. *Id.* at 234:14-22. Plaintiffs proffered no clear evidence Dr.

Amor's private dental practice sustained any loss of business due to Defendant's defamatory statements. Dr. Amor himself testified "it's very hard to tell" whether a decline in patients coming to his practice was due to Defendant's statements. *Id.* at 236:23-237:3. Dr. Amor also testified he sought damages for the amount of time he spent reviewing Defendant's defamatory statements and searching for an attorney. T. Tr., October 14, 2022, at 15:17-24 [ECF No. 135].

Based on the available evidentiary record, the Court finds the damages award of $750,000 in compensatory damages and $250,000 in punitive damages to Dr. Amor, and $300,000 in compensatory damages and $100,000 in punitive damages to Ms. Amor is excessive and unsupported by the evidence. There is no evidence to support a claim the Amors sustained economic damages commensurate with the award amount. Dr. Amor himself testified that it would be "very hard to tell" whether he lost any patients as a result of Defendant's statements. Plaintiffs did not offer any evidence of job loss, suspension, or pay decrease as a result of the statements. Plaintiffs did not offer any evidence demonstrating even approximately how many people saw and read Defendant's statements. Looking to related cases, it is clear Dr. Amor's sleeping difficulties, decision to maintain a tighter circle of friends, and time reviewing and assessing Defendant's statements support an award of some damages, but not $750,000 in compensatory damages. Moreover, it is unclear what evidence, if any, Plaintiffs presented as to Ms. Amor's economic, emotional, or reputational injuries. This Court's determination is supported by a review of relevant, similar case law.

In *Prendeville*, the plaintiff, whom the court found to be a limited purpose public figure, was awarded $850,000 in compensatory damages after prevailing on a defamation claim at trial. *Prendeville*, 155 Fed. Appx. at 304. The trial court found that, because there was no claim for lost wages and the plaintiff "offered scant testimony on harm to his professional reputation" remittitur

of damages was necessary. *Id.* at 305. The trial court reduced the jury's damages award from $850,000 to $50,000. *Id.* The plaintiff had the option to either accept the remittitur, or undergo a second trial as to both liability and damages. *Id.* at 304. The plaintiff rejected remittitur and a new trial was granted. *Id.* This time, however, the new jury found for the defendants. *Id.*

The plaintiff appealed to the Ninth Circuit, arguing both that the trial court's remittitur of damages was an abuse of discretion and that the trial court improperly required the plaintiff to relitigate the issue of liability as well as damages in the second trial. *Id.* at 304-05. The Ninth Circuit rejected both arguments. As to the trial court's remittitur of damages, the Ninth Circuit agreed "[a] remittitur to $50,000 was appropriate because the [trial] court reasonably concluded that $50,000 was the maximum amount sustainable by the evidence." *Id.* As to the trial court's decision to require plaintiff to relitigate both damages and liability when remittitur was rejected, the Ninth Circuit held the trial court's decision was proper because "[w]here damages are 'so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty,' retrial must be on both issues." *Id.* at 305 (quoting *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)).

In *Celle*, the plaintiff, whom the court held was a public figure, prevailed on his libel claim for statements published in three newspaper articles. *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 171 (2d Cir. 2000). The jury concluded the plaintiff did not suffer actual damages, but awarded the plaintiff $1.00 in nominal damages and $15,000 in punitive damages. *Id.* at 171-172. The jury heard evidence the defendant, a newspaper, published articles about the plaintiff, a New York City area radio commentator. *Id.* at 172. Both plaintiff and defendant were competing media within the New York City area Filipino-American community. *Id.* The articles at issue stated that a federal judge found the plaintiff was "negligent" in a separate defamation action that had been

brought against the plaintiff himself; that the plaintiff was experiencing "dwindling listeners" to his radio show; and that the plaintiff's radio contract would be expiring because listeners were "offended by the foul language" used by the plaintiff in his radio show. *Id.* at 172-73. The trial court denied the defendant's posttrial motions. *Id.* at 175. On appeal, the Second Circuit held that while the defendants were not entitled to a new trial, the punitive damage award was excessive, and reduced the award from $15,000 to $10,000. *Id.* at 191. "If the plaintiffs do not accept the remittitur," the Second Circuit held, "the district court shall vacate the punitive damage award and retry either the punitive damage issue, or the entire case." *Id.*

In contrast, courts decline to remit damages where they are supported by the evidentiary record. In *Armstrong v. Shirvell* the plaintiff, an openly gay student council president at the University of Michigan, prevailed at trial on numerous claims, including defamation, after the defendant published online statements: accusing the plaintiff of being a "dangerous…radical homosexual activist," placing a picture of the plaintiff's face next to a swastika and stating "[m]uch like Nazi Germany's leaders, many of whom were also homosexuals, Armstrong believes that any and all opposition must be suppressed by whatever means necessary," accusing the plaintiff of being an "anti-Christian bigot" who spent most of his time "engaging in underage binge-drinking" and suggesting the plaintiff may have been involved in "violent attacks against places of worship." *Id.* at 438. In addition to publishing over 100 defamatory statements online, the defendant appeared on local television station WXYZ and national networks CNN and Comedy Central where the defendant supported his online statements and further stated the plaintiff "was acting like a gay Nazi." *Id.* at 439.

In support of his claim for damages, the plaintiff testified he was rejected from the Teach for America program after the defendant's statements began to emerge, was unable to focus on

pursuing career opportunities, and that the defendant's statements negatively impacted his future career prospects, particularly given the plaintiff's interest in a career in politics. *Id.* at 449. "The record also contained significant evidence of the emotional harm" the plaintiff suffered, including evidence that he suffered depression and sought counseling. *Id.* at 449-450.

The jury found the defendant acted with actual malice and awarded the plaintiff $750,000 in compensatory damages and $500,000 in exemplary damages on his defamation claim. *Id.* at 400 n.2. On appeal, the Sixth Circuit affirmed the defamation award in its entirety, finding "there was sufficient evidence for a jury to award significant compensatory damages." *Id.* at 450.

Here, unlike the statements in *Armstrong*, Defendant's defamatory statements were substantially less in volume and were not published or broadcast to a national audience. Plaintiffs do not claim they sustained any loss in future career prospects. Plaintiffs also do not claim they suffered emotional harm such as depression, or that they sought counseling. Although the award amounts between this case and *Armstrong* are similar, the evidentiary records supporting these damages are not. Similar to *Prendeville*, evidence of damages sustained by Plaintiffs is sparse. Here, Plaintiffs failed to present evidence as to how many people read the Defendant's defamatory statements, and the evidence clearly indicates the audience of those who read it was substantially less than the audience in *Armstrong*.

Based on the foregoing evidence introduced at trial, and examination of comparable cases, the jury's combined $1.4 million damages assessment against Defendant is excessive. *See Dileo v. Davis*, No. 89-2485, 1995 U.S. Dist. LEXIS 4118 (E.D. La. Mar. 29, 1995) (reducing $2 million jury award in defamation case to $500,000); *Sunlight Saunas, Inc. v. Sundance Suana, Inc.*, No. 04-2597, 2006 U.S. Dist. LEXIS 79637 (D. Kan. 2006) (ordering remittitur of punitive damages award in defamation case from $150,000 to $50,000). Accordingly, remittitur of damages is

appropriate. However, this Court is mindful of the jury's essential role as factfinder, and that any remittitur of damages must not "intrude on the province of the jury." *Blakely v. Continental Airlines*, 992 F. Supp. 731, 739 (D. N.J. 1998). Because the "ranges of compensatory damages in a jury case are not fixed in stone or subject to a mathematical formula," there "is no precise way to determine a proper remittal figure." *Lesende v. Borrero*, No. 06-4967, 2014 U.S. Dist. LEXIS 116896 at *14 (D. N.J. Aug. 22, 2014).

Upon consideration of the aforementioned evidence presented to the jury in this case, and similar relevant cases, as well as the importance of respecting the province of the jury to act as factfinder and the jury's discretion to award a reasonable amount of damages, the Court remits the compensatory damages award with respect to Plaintiff Dr. Amor to $50,000, and remits the compensatory damages award with respect to Plaintiff Ms. Amor to $20,000.

"In deciding the amount of the remittitur" with respect to punitive damages, "a court may consider the nature of defendant's conduct, the extent of harm to the plaintiff, the defendant's wealth, and the awards of punitive damages in similar cases." *Leab v. Cincinnati Ins. Co.*, No. 95-5690, 1997 U.S. Dist. LEXIS 8868 at *54 (E.D. Pa. June 23, 1997). Upon consideration of these factors, the Court remits the punitive damages award with respect to Plaintiff Dr. Amor to $1,000 and with respect to Plaintiff Ms. Amor to $500.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 121) is **DENIED IN PART** and **GRANTED IN PART**. The Defendant's motion to reverse the judgment is **DENIED**. A reasonable jury, making its own determinations as to credibility of witnesses and applying the applicable legal standard, could have found for the Plaintiffs in this action.  The Defendant's

motion to vacate the jury's compensatory and punitive damages is **DENIED IN PART**. The Court declines to vacate the jury's damages awards in their entirety, but remits the compensatory damages award to Plaintiff Dr. James Amor from $750,000 to $50,000, the punitive damages award to Plaintiff Dr. James Amor from $250,000 to $1,000, the compensatory damages award to Plaintiff Ms. Patricia Amor from $300,000 to $20,000, and the punitive damages award to Plaintiff Ms. Patricia Amor from $100,000 to $500. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge